## CIRCUIT COURT OF THE CITY OF ROANOKE

J. W. Burress, Inc.

v.

Department of Motor Vehicles,
Richard D. Holcomb, Commissioner,
Commonwealth of Virginia,
and Elgin Sweeper Company

January 30, 1996

Case No. CH95000246(R)

BY JUDGE CLIFFORD R. WECKSTEIN

This is an appeal from an administrative decision of the Commissioner of Department of Motor Vehicles ("DMV"). J. W. Burress, Inc., contends that the Commissioner misinterpreted the Virginia Motor Vehicle Dealers Act, Virginia Code §§ 46.2-1500 through 46.2-1582 ("the Act"), when he allowed Elgin Sweeper Company to appoint a new dealer in Virginia.

The parties have agreed in their pleadings and memoranda and at oral argument that there are no material facts in dispute. Although the record does not contain a transcript of any proceedings before the hearing officer and may be missing other documents specified by Rule 2A:3, it appears that I have before me everything necessary to decide this administrative appeal.

Elgin manufactures street sweepers, which are "motor vehicles," as the Act defines that term. Code §§ 46.2-100 and 46.2-1500. Elgin is licensed by the DMV as a manufacturer of motor vehicles and, under the Act, must

sell its sweepers in the Commonwealth through licensed dealers. Code § 46.2-1572. Burress is licensed as Elgin's motor vehicle dealer.

Elgin and Burress have had a business relationship since at least 1988. By contract dated March 22, 1993, Elgin appointed Burress as authorized dealer of Elgin's full product line for an "area of primary sales responsibility" that included the entire state of Virginia and portions of North Carolina. At all times relevant to this case, Burress has had Virginia dealerships located in Roanoke, Norfolk, and Gainesville. Each of these locations sells and services Elgin's full product line; from these locations, Burress sells Elgin street sweepers throughout the state.

Under the 1993 contract, Burress was the exclusive dealer for the entire Commonwealth of Virginia for Elgin vehicles, parts, and service. In early 1994, however, Elgin notified Burress that it would reduce Burress's territory, and would appoint an additional dealer in Virginia. (This notice followed other correspondence between Elgin and Burress which, though part of the record, is now irrelevant.)

Burress contested Elgin's action, and requested a hearing before the Commissioner, pursuant to Code § 46.2-1569(4). That statute declares it unlawful for a manufacturer:

> To grant an additional franchise for a particular line-make of motor vehicle in a relevant market area in which a dealer or dealers in that line-make are already located unless the franchisor has first advised in writing all other dealers in the line-make in the relevant market area. No such additional franchise may be established at the proposed site unless the Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise, and after hearing on the matter, that there is reasonable evidence that after the grant of the new franchise the market will support all of the dealers in that line-make in the relevant market area . . . .

On February 14, 1994, the Commissioner wrote to Burress and Elgin that "I have agreed to hold a Formal Hearing . . . . This hearing request is being granted under Virginia Code § 46.2-1569(4) to address the Elgin Sweeper Company change in franchise area and notice of intent to appoint an additional franchise in the area in which a dealer in that line-make is already located." The Commissioner designated a hearing officer. How-

ever, before the hearing officer could act, Elgin removed the proceedings to the United States District Court for the Western District of Virginia, which concluded that abstention was appropriate and remanded the case to the Commissioner. *J. W. Burress, Inc. v. Elgin Sweeper Co.* (C/A 94-0143-R, W.D. Va., July 15, 1994). The hearing officer conducted a formal administrative hearing. On February 2, 1995, he filed proposed findings of fact and conclusions of law with the Commissioner.

The hearing officer's report recites that the Commissioner, by letter dated August 12, 1994, directed that the hearing officer determine Burress's "relevant market area," as that term is defined by Code § 46.2-1500, and determine whether Burress had standing to request a hearing under § 46.2-1569(4) if, in fact, Elgin's proposed new dealership was outside of Burress's "relevant market area."

The hearing officer recommended that the Commissioner find that Burress's "relevant market area" was coextensive with its "area of primary responsibility" under the 1993 contract, *i.e.*, the entire Commonwealth of Virginia. Having so concluded, the hearing officer reported to the Commissioner that no evidence had been presented from which the hearing officer could make a factual finding about the impact of the appointment of a new dealership within that "relevant market area."

On February 17, 1995, the Commissioner issued his "final case decision," declining to adopt the hearing officer's proposed findings and conclusions. The Commissioner found that Burress's "relevant market area," under Code § 46.2-1500, is "an area within a radius of fifteen miles around its existing franchised dealer location in Roanoke, Virginia." "Consequently," the Commissioner held, Burress is "not entitled to a determination, pursuant to Va. Code § 46.2-1569(4), as to the appointment of Virginia Public Works Equipment ("VPWE") as an Elgin dealer in Richmond, Virginia, because that appointment is not within the relevant market area of J. W. Burress, Incorporated."

The Commissioner declined to stay his decision, and Burress properly perfected its appeal to the Circuit Court. Although both the hearing officer and the Commissioner addressed issues concerning the Commissioner's jurisdiction, Elgin, in this appeal, has not contested the Commissioner's jurisdiction, or this Court's power to consider and decide the administrative appeal.

The first problem faced by a reviewing Court is that the record contains no support for the Commissioner's factual determination that Burress's "existing franchised dealer location" is in Roanoke. Elgin concedes that

this factual determination is unsupported by any evidence. Elgin has conceded that Burress's Elgin dealerships were, at all material times, located at three places in this state, Roanoke, Norfolk, and Gainesville. For example, in *Appellee Elgin's Motion to Dismiss and for Summary Judgment and Brief in Opposition to Petition for Appeal*, at 4, Elgin stated:

> The following facts are established in the record, are undisputed and are the only facts necessary to the disposition of this appeal.
> 1. Burress has three licensed motor vehicle dealership locations in Virginia, in Roanoke, Norfolk, and Gainesville.

Elgin contends, however, that the Commissioner engaged in the proper legal analysis. Therefore, counsel for Elgin suggested at oral argument, this Court either should (a) amend the Commissioner's findings to define Burress's three "relevant market area[s]" within the Commonwealth, and thereupon affirm the Commissioner's decision; or (b) find that the Commissioner's legal analysis was correct, and then remand the case to the Commissioner for the Commissioner to make the proper finding concerning Burress's three "relevant market area[s]." In Elgin's view, the Commissioner's factual mistake does not affect the validity of his decision that Burress was not entitled to a hearing under Code § 46.2-1569(4). I do not agree.

"Review of agency factual decisions is governed by the 'substantial evidence' test. *Johnston-Willis, [Ltd. v. Kenley,]* 6 Va. App. [231] at 242, 369 S.E.2d [1] at 6 [(1988)]. Under this standard, the scope of review is limited to ascertaining whether there was substantial evidence in the agency record to support the decision. Code § 9-6.14:17." *Turner v. Jackson*, 14 Va. App. 423, 429-30, 417 S.E.2d 881 (1992). "The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Johnston-Willis*, 6 Va. App. at 242.

There is, as Elgin concedes in oral argument, *no* evidence (and, therefore, certainly no "substantial evidence") to support the proposition that, at any time relevant to these proceedings, Burress sold Elgin products only from a single location. Elgin concedes — indeed, Elgin asserts -- that Burress has three licensed vehicle dealerships in the Commonwealth. Therefore, a reasonable mind necessarily must conclude that the Commissioner erred in deciding that Burress's "relevant market area" could be determined only by reference to "its existing franchised dealer location in Roanoke, Virginia."

Having determined that the Commissioner's finding is without factual support, the reviewing Court must set the Commissioner's determination aside, and remand the matter to the Commissioner for further proceedings, "as the court may permit or direct in accordance with law." Code § 9-6.14:19.

The Commissioner's unsupported factual finding caused him to commit an error of law that should not be repeated after this case is remanded. That error of law occurred in the Commissioner's application of the provisions of Virginia Code § 46.2-1500 which define the term "relevant market area."

"Unless the context otherwise requires," Code § 46.2-1500 provides, certain "words and terms for the purpose of this chapter shall have the following meanings." The statute provides that:

*"Relevant market area"* means as follows:

1. In metropolitan localities, the relevant market area shall be a circular area around an existing franchised dealer with a population of 250,000, not to exceed a radius of ten miles but in no case less than seven miles.

2. If the population in an area within a radius of ten miles around an existing franchised dealer is less than 250,000, but the population in an area within a radius of fifteen miles around an existing franchised dealer is 150,000 or more, the relevant market area shall be that area within the fifteen-mile radius.

3. In all other cases the relevant market area shall be an area within a radius of twenty miles around an existing franchised dealer or the area of responsibility defined in the franchise, whichever is greater. In any case where the franchise agreement is silent as to area responsibility, the relevant market area shall be the greater of an area within a radius of twenty miles around an existing franchised dealer or that area in which the franchisor otherwise requires the franchisee to make significant retail sales or sales efforts.

In determining the population for this definition, the most recent census by the U.S. Bureau of the Census or the most recent population update, either from the National Planning Data Corporation or other similarly recognized source, shall be accumulated for all census tracts either wholly or partially within the relevant market area.

The Commissioner, proceeding from an erroneous factual determination and treating Roanoke as the sole location of the "existing franchised dealer," determined the "relevant market area" to be an area within a radius of fifteen miles of the Roanoke location. This determination was based on Roanoke's population, and the provisions of paragraph 2 of the statutory definition.

Elgin, recognizing that the Commissioner's determination was factually flawed, supplements the factual materials submitted to the Commissioner with an additional affidavit, filed with this Court, in order to establish the population of each of the areas in which the Burress dealerships are located. Elgin then makes the following argument:

> The Commissioner determined that Burress' "relevant market area" encompasses a 15-mile area around Burress' Roanoke facility. Assuming, however that each of Burress' three licensed locations considered individually could be deemed to have its own "relevant market area," each location falls within paragraph 1 or paragraph 2 of the definition of a "relevant market area." *See* Patterson Affidavit. The Norfolk dealership, located in an area that has a population of over 760,000 within a 10-mile radius of the facility, falls within paragraph 1. The Roanoke and Gainesville dealerships, located in areas that have populations of over 230,000 within 15-mile radii of those facilities, fall within paragraph 2. Consequently, each of Burress' licensed motor vehicle dealership locations has a "relevant market area" within a radius of no more than 15 miles around the location.
>
> Plainly, therefore, Elgin's additional Virginia dealer (VPWE), located in Richmond, is far outside of Burress' "relevant market area."

*Appellee Elgin's Motion to Dismiss and for Summary Judgment and Brief in Opposition to Petition for Appeal*, at 8.

The evidence, to reiterate, admits of no conclusion but that Burress sold Elgin street sweepers from all three locations at all material times. The "existing franchised dealer," under the contract between Elgin and Burress, was not located in a single "metropolitan locality," or other single area. With deference to the Commissioner, nothing in this record would support the conclusion that Roanoke — *or* Gainesville, *or* Norfolk — is *the* location of the "existing franchised dealer." Without finding that there is a single such location, the Commissioner cannot determine the "circular

area around" the dealer, or the population in an area within any particular radius of the dealer.

Elgin's argument is that the Commissioner should make, for each of the three areas in which a Burress dealer existed, the same determination that the Commissioner would make if there were only one Burress sales location. However, neither paragraph 1 nor paragraph 2 of the statute's definitional language indicates how the "relevant market area" is to be determined when a motor vehicle dealer has more than one licensed dealership location. Neither of these paragraphs allows the "assumption" that Elgin makes in its argument, "that each of the Burress' three licensed locations considered individually could be deemed to have its own 'relevant market area'."

The General Assembly, however, has provided for this contingency. It has provided that "[i]n all other cases" — *i.e.*, under those circumstances in which the franchised dealer does not come within the ambit of paragraphs 1 and 2 — paragraph 3 defines the "relevant market area." On the facts of this case, since the "existing franchised dealer" is located in multiple areas, not in a single place as contemplated by paragraphs 1 and 2, then the provisions of paragraph 3 necessarily apply.

Inasmuch as the contract between Burress and Elgin specifies the entire Commonwealth as "the area of responsibility defined in the franchise," then, under the definitional scheme of § 46.2-1500, the entire Commonwealth of Virginia is the dealer's "relevant market area." For me to hold otherwise — that is, for me to do as Elgin suggests — would be for me to engraft additional language unto paragraphs 1 and 2 of the definition of "relevant market area" of Code § 46.2-1500. This, I cannot do. A Court "may not add to a statute language which the legislature has chosen not to include." *County of Amherst v. Brockman*, 224 Va. 391, 397, 297 S.E.2d 805 (1982). *See Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990). Elgin's argument requires the Court to "assume" what the General Assembly intended. Application of paragraph 3 requires only that I read the statute's plain language as it is written. *See Moore v. Gillis*, 239 Va. 239, 241, 389 S.E.2d 453 (1990); *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985).

In the context of a manufacturer-dealer relationship in which there is no factual basis upon which to rest a determination that Burress's sales of Elgin Sweepers took place from one location, paragraphs 1 and 2 of the definition of "relevant market area" do not apply, and the "catchall" provision of paragraph 3 must necessarily be invoked. Accordingly, the

Court will vacate the Commissioner's final case determination, and remand this matter to the Commissioner, with directions that the Commissioner, in conformity with law, conduct a hearing and make a determination whether "after the grant of the new franchise the market will support all of the dealers in that line-make in the relevant market area." Code § 46.2-1569(4). Until such determination is made by the Commissioner, the Commissioner shall not permit Elgin to have any other dealers within the "relevant market area," the Commonwealth of Virginia.