**Richmond**

STEPHEN C. TURNER

v.

LARRY D. JACKSON, COMMISSIONER

No. 0769-91-2

Decided May 5, 1992

COUNSEL

John M. DiJoseph (Sattler & DiJoseph, on brief), for appellant.

Diane B. Beck, Assistant Attorney General (Mary Sue Terry, Attorney General; Roger L. Chaffe, Senior Assistant Attorney General; Thomas J. Czelusta, Senior Assistant Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—On May 15, 1989, Larry D. Jackson, the Commissioner of the Department of Social Services,[1] determined that a complaint of child abuse against Stephen C. Turner was "founded."[2] Turner appealed the Commissioner's decision to the Circuit Court of Chesterfield County, which sustained the "founded" disposition of child abuse. On appeal, Turner alleges

---

[1] The Virginia Department of Social Services ("DSS") is under the direction of the Commissioner of Social Services ("Commissioner"), the appellee in this matter. Code § 63.1-1.1. Within each county or city in the Commonwealth there is a local department of social services ("department"). Code § 63.1-248.2(C). Each local department must establish a child-protective services unit. Code § 63.1-248.6(A).

[2] After investigating a complaint, the department will render a disposition finding that the complaint is "founded," "reason to suspect," or "unfounded."

five grounds of error: (1) the hearing officer applied the incorrect burden of proof and improperly admitted evidence of prior abuse by Turner; (2) the circuit court applied the incorrect standard of review; (3) the Commissioner lacked statutory authority to adopt the child protective services guidelines;[3] (4) the circuit court erred in finding that the statute and guidelines are not unconstitutionally vague; and (5) the circuit court erred in finding that Turner's due process rights were not violated. We affirm the decision of the circuit court.

This matter stems from a complaint of alleged physical abuse by Turner of his three-year-old daughter, Julene. In November 1988, the complaint was investigated by the Chesterfield County Department of Social Services ("department"), and determined to be "founded physical abuse." Turner appealed the finding and, in an informal conference on February 21, 1989, the local director upheld the "founded" disposition. Turner appealed the decision to the Commissioner. On April 28, 1989, a hearing was conducted before a hearing officer, acting by designation of Commissioner. On May 15, 1989, the hearing officer sustained the "founded" disposition. Turner appealed the hearing officer's determination to the Circuit Court of Chesterfield County.

Turner's involvement with the department began in February 1986, when the department received a complaint that the Turners were leaving their four children, then ages four, two, and nine months (twins), alone for thirty to forty minutes while Mrs. Turner drove Mr. Turner to work. After an investigation by the department, the complaint was determined to be "founded." In a letter dated January 31, 1989, Turner admitted to leaving the children alone for twenty minutes approximately six times. On brief, Turner states that the children were left alone and asleep one morning for about fifteen minutes.

On April 28, 1988, Turner was again referred to the department for possible child abuse. On this occasion, Turner allegedly hit his daughter, Rachel, on her face with his fist, resulting in a bruised temple and black eye. The incident was determined to be "reason to suspect."

---

[3] By authority of the Commissioner, the DSS created the Protective Services Manual, which contains the guidelines at issue here, for use by the local departments.

On November 23, 1988, the department received a complaint of abuse that is the basis for this appeal. According to the complaint, Turner pulled a nickel-sized plug of hair from the head of his daughter Julene, then three years old. The complaint was investigated by Jim McDonald. During the investigation, the Turner children explained that Julene had spilled water in the bedroom. Turner tried to get her to go to the living room by holding and pulling her hair, but Julene resisted. Subsequently, Turner came to the department's office to discuss the incident. At that time, he admitted pulling Julene's hair but denied that it happened at home. Jim McDonald stated that:

Turner stated that he had the children with him and was crossing Midlothian Turnpike and Julene had jumped ahead of him and the only way he could stop her from going out in front of a car was to pull her by the hair. He stated that he was surprised that he had hair in his fingers after that incident.

In his January 31, 1989, letter to the department, Turner stated that he was attempting to discipline Julene in her bedroom and grabbed her by the hair:

Julene was messing up her bedroom with water, I do believe. When I attempted to go into her bedroom to stop her from fighting with Stephanie and to try to discipline Julene, as I got closer to her she began to fight and pull away from me. And as she fought I grabbed for her wherever I could and got her hair. As I did grab her hair a small part came out as she pulled away from me. I was shocked.

At the hearing before the Commissioner, Turner testified that he saw that some liquid had been spilled in the bedroom and determined that Julene had done it. Turner told her "to come to me" two times, and then "she started swinging her arms wildly." Julene "kept on . . . trying to fight . . . away from me, so in the midst of it, I was trying to block with one hand and grab hold to any part of her body I could . . . and it just happened . . . that I just grabbed a small piece of hair" as she pulled away.

Affirming the "founded" disposition, the circuit court held that (1) the hearing officer applied the correct burden of proof and did not improperly admit prior acts of abuse by Turner; (2) the

proper standard of review of the agency determination is the substantial evidence test; (3) Turner was not denied due process; (4) Code § 63.1-248.2 and the guidelines are not unconstitutionally vague; and (5) the evidence was sufficient to support the hearing officer's determination.

## I.

Turner argues that the hearing officer (1) applied the wrong burden of proof and (2) improperly admitted prior acts of abuse by Turner in this proceeding.

First, Turner asserts that the hearing officer erred in applying the "clear and convincing" standard. In the informal conference, the first step in the administrative process, abuse or neglect can be found only if the evidence is "clear and convincing."[4] Protective Services Manual, Vol. VII, Sec. III, Chap. A at 17. In the administrative appeal before the Commissioner, however, the appellant must prove only by a preponderance of the evidence that the record should be amended because it contains information which is "irrelevant or inaccurate." Code § 63.1-248.6:1(A).

■ In the administrative appeal, the hearing officer, acting by designation of the Commissioner, found "clear and convincing" evidence of physical abuse. The hearing officer's finding of clear and convincing proof of physical abuse by Turner necessarily negates Turner's contention that he met his burden of proof by a preponderance of the evidence that the record shall be amended because it contained irrelevant or inaccurate information. Clear and convincing proof is a higher standard of proof than that required under a preponderance standard.

Clear and convincing evidence [is]. . . "[t]hat measure or degree of proof which will produce in the mind of the trier of

---

[4] There are three different steps in the administrative process. First, after a complaint is filed, a representative of the department investigates the complaint and makes an initial determination of whether there is clear and convincing proof of abuse. If a complaint is deemed "founded" or "reason to suspect," the alleged abuser may appeal the determination to the local director of the department. In this first appeal proceeding, called the "local conference," the local director must determine whether the record should be amended. Finally, in the last stage of the appeal process, the alleged abuser may request a hearing before the Commissioner. Here, the alleged abuser must prove by a preponderance of the evidence that the record should be amended because it contains information which is irrelevant or inaccurate. Protective Services Manual, Vol. VII, Sec. III, Chap. A at 56-60.

facts a firm belief or conviction as to the allegations sought to be established. *It is intermediate, being more than a mere preponderance*, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986) (emphasis added) (quoting *Gifford v. Dennis*, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985)). The hearing officer found clear and convincing proof of physical abuse by Turner. He did not require Turner to prove by this higher standard that the record should be amended. Thus, there is no merit to Turner's assertion that he was harmed by the hearing officer's determinations based upon the clear and convincing standard of proof.

■ Turner also assigns as error in the hearing before the commissioner the admission of prior acts of abuse. Turner cites several cases supporting his position that the admission of other crimes or bad acts is reversible error. A review of the record indicates that it was Turner, not the department, who first introduced these prior acts into the case through his letter to the local director. Turner cannot introduce these acts into the case and later complain that they were considered by the agency. Furthermore, even if the prior abuse of the children by Turner would be inadmissible in a judicial proceeding, admission of such acts in an administrative proceeding is not error. "The rules of evidence are considerably relaxed in administrative proceedings, and the findings of administrative agencies will not be reversed solely because evidence was received which would have been inadmissible in court." *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 270, 308 S.E.2d 123, 126 (1983); *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 258, 369 S.E.2d 1, 16 (1988). Consequently, any consideration of these prior instances of abuse by Turner was not error.

## II.

Turner next contends that the circuit court applied the wrong standard of review in determining whether the agency decision was supported by the evidence. Review of agency factual decisions is governed by the "substantial evidence" test. *Johnston-Willis*, 6 Va. App. at 242, 369 S.E.2d at 6. Under this standard, the scope of review is limited to ascertaining whether there was substantial

evidence in the agency record to support the decision. Code § 9-6.14:17.

Turner claims that this standard of review is inappropriate because this case involves issues of constitutional rights and procedures. According to Turner, our decision in *Johnston-Willis* requires a reviewing court to give less deference to an agency's decision where the issues involve allegations of a denial of constitutional rights or a failure to follow required procedures. Because he has alleged certain constitutional and procedural violations, Turner concludes that the circuit court should have given the department's decision less weight on review. However, Turner misconstrues our decision in *Johnston-Willis*.

In *Johnston-Willis*, we explained that it is "helpful to define the appropriate standard of review in terms of the degree of deference to be given to agency decisions." 6 Va. App. at 243, 369 S.E.2d at 7. From this perspective, the degree of deference afforded an agency decision depends upon several considerations to be weighed by the reviewing court: whether the issues are legal or factual; whether the issues involve a denial of constitutional rights or failure to follow required procedures; and whether the issues fall within the area of experience and specialized competence of the agency. *Id.* at 242-43, 369 S.E.2d at 7-8. Thus, the fact that this case may involve questions of constitutional or procedural rights does not, standing alone, require the reviewing court to apply a less deferential standard of review to the agency's decision. Rather, the factors to which Turner points are only one part of the analysis.

"[W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." *Id.* at 244, 369 S.E.2d at 8. Thus, the reviewing court was entitled to consider that the General Assembly has entrusted the investigation of child abuse complaints to the DSS, Code § 63.1-248.6, and charged the Commissioner with supervising the administration of the law and ensuring that the laws are "carried out to their true intent and spirit," Code § 63.1-4. We have consistently held that the reviewing court " 'may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature

with the administrative function.' " *Johnston-Willis*, 6 Va. App. at 244, 369 S.E.2d at 8 (quoting *Virginia Alcoholic Beverage Control Comm'n v. York Street Inn, Inc.*, 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)). Upon review of all of the factors identified in *Johnston-Willis*, we find that the circuit court did not err in applying the substantial evidence test.[5]

■ Having determined the appropriate standard of review, we next decide whether there was substantial evidence supporting the agency's determination of physical abuse. "The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Johnston-Willis*, 6 Va. App. at 242, 369 S.E.2d at 7 (citations omitted). Under Code § 63.1-248.2(A)(1), a child is abused when his or her "parent . . . creates or inflicts . . . upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement, or impairment of bodily or mental functions." Here, the hearing officer found that Turner had pulled a nickel-sized plug of hair from his daughter's head. Rather than deny these findings, Turner argued that the hair pulling was done accidentally, not intentionally, and thus was not "physical abuse."

■ Turner testified that he grabbed Julene's hair accidentally. As the only witness to testify, Turner argues that the hearing officer improperly disregarded his uncontradicted testimony. It is true that " 'uncontradicted evidence should be accepted as true and cannot be wholly discredited or disregarded if not opposed to probabilities, even though the witness is an interested party.' " *Molash v. Commonwealth*, 3 Va. App. 243, 247, 348 S.E.2d 868, 871 (1986) (quoting *Stegall v. Commonwealth*, 208 Va. 719, 722, 160 S.E.2d 566, 568 (1968)). However, it is also true that testi-

---

[5] On brief, Turner also claims that the circuit court should have reviewed the agency's decision under the clear and convincing standard. He maintains that because the two administrative appeals require a different burden of proof, the circuit court should apply the clear and convincing standard in reviewing those decisions. However, Turner confuses the terms "burden of proof" and "standard of review." The term "burden of proof" refers to the sufficiency of evidence required to meet a proponent's burden of producing evidence and burden of persuasion. *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988) (citation omitted). The term "standard of review," on the other hand, refers to the degree of deference an appellate court gives a determination by an agency or lower court. Clear and convincing refers to the burden of proof, not the standard of review. Therefore, Turner's argument is misplaced.

mony, although uncontradicted, " 'may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, especially where the witness is a party.' "  *Id.*

A review of the record indicates that Turner's testimony was "contradictory in itself." The record reflects that Turner gave several different versions of how he pulled Julene's hair. Initially, Turner told the investigator that Julene was going to step out into traffic on Midlothian Turnpike and he grabbed her by the hair to prevent her from being harmed. Later, in his letter to the local director, he stated that he was attempting to discipline Julene in her room and he grabbed her by the hair; when she pulled away, her hair came out. At the hearing before the hearing officer, Turner stated that Julene was wildly throwing her arms about and that he was trying to gain control of her when she pulled away, leaving a plug of hair in his hand. On this record, we find that the hearing officer was entitled to disregard Turner's testimony, because it was inconsistent and contradictory.

From the record, we find substantial evidence that Turner's actions constituted abuse of his daugher, Julene. Therefore, we find that the circuit court did not err in finding there was substantial evidence to support the hearing officer's determination of physical abuse.

### III.

Turner contends that the Commissioner lacked the authority to adopt the protective services guidelines. However, Turner's failure to raise this issue below precludes our review on appeal. Objections with grounds therefor must be stated at the time of the court's ruling. Rule 5A:18. Consequently, we may not reach the merits of Turner's argument.[6]

### IV.

█ Turner next argues that the statute, Code § 63.1-248.1, and the guidelines are unconstitutionally vague insofar as they define "physical abuse." In reviewing Turner's vagueness challenge, we

---

[6]  In *Jackson v. W.*, 14 Va. App. 391, 419 S.E.2d 385 (1992), we held that the Commissioner had the statutory authority to adopt the DSS's Protective Services Guidelines. Consequently, were we to reach the merits of Turner's argument, our determination would be controlled by our holding in *Jackson.*

may only determine whether the statute and guidelines are unconstitutionally vague as they apply to him. " 'Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.' " *Jackson v. W.*, 14 Va. App. 391, 402, 419 S.E.2d 385, 391 (1992) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)). Here, Turner does not argue that the statute or guidelines interfere with any First Amendment activity. That being the case, we consider only whether the statute and guidelines are vague as they apply to the facts of this case, and not as they may apply to any hypothetical situation Turner may raise. *See id.*

■ "Essentially, the vagueness doctrine demands that laws be drawn with a degree of precision and clarity." *Jackson*, 14 Va. App. at 403, 419 S.E.2d at 392. A law must "clearly delineate" what conduct is prohibited in order to " 'give the person of ordinary intelligence a reasonable opportunity' " to conform his conduct accordingly, and to prevent arbitrary and discriminatory enforcement. *Coleman v. City of Richmond*, 5 Va. App. 459, 466, 364 S.E.2d 239, 243, *reh'g denied*, 6 Va. App. 296, 368 S.E.2d 298 (1988) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Although absolute precision is not required, a law must afford a reasonable degree of certainty so that a person is not left to guess at what conduct is prohibited. *See Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973).

The statute defines an "abused or neglected child" as any child under eighteen years of age:

> Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement, or impairment of bodily or mental functions.

Code § 63.1-248.2(A)(1). Turner contends that the language "physical injury" is impermissibly vague. We disagree. This language puts the average person on notice that conduct that creates or inflicts physical harm upon the child falls within the statute's

proscription.[7] Moreover, with regard to the facts of this case, we find that a person of average intelligence would understand that pulling out a section of hair from a three-year-old child's head would result in a physical injury to that child.

We note that our holding is in accord with those of other jurisdictions that have considered void-for-vagueness challenges involving language similar to that at issue in this case. In those cases, the statutory language was directed at the termination of parental rights, proceedings where a party may suffer a grave penalty — loss of a child. Despite the serious consequences, these courts have upheld the language. In *People v. D.A.K.*, 596 P.2d 747 (Colo.), *appeal dismissed*, 444 U.S. 987 (1979), the Colorado Supreme Court considered the constitutionality of a statute defining a neglected child as one whose parents had "subjected him to mistreatment or abuse." The court held that the statute was not impermissibly vague. *Id.* at 750-51. In so doing, the court remarked that the proceeding was civil, not criminal, and that the statute was as precise as it could be in order to protect a child's safety and, at the same time, allow for flexibility in determining the best interests of the child. *Id.* at 751. Similarly, the Texas Court of Appeals held that a statute providing for the termination of parental rights upon a showing that a parent had engaged in conduct "endangering the physical or emotional well-being of the child" was not so vague as to be unconstitutional. *D.F. v. State*, 525 S.W.2d 933, 941 (Tex. Civ. App. 1975). *See also In re Hanks*, 553 A.2d 1171, 1175-76 (Del. 1989) (parent fails to "plan adequately" for child's needs); *Chandler v. Cochran*, 275 S.E.2d 23, 26-27 (Ga.) (parent fails to "provide for the care and support of the child"), *cert. denied*, 454 U.S. 872, *reh'g denied*, 454 U.S. 1094 (1981); *In re Gentry*, 369 N.W.2d 889, 893 (Mich. Ct. App. 1985) ("fit home," "proper home," "proper care and custody," and "mental deficiency or mental illness"); *In re Metteer*, 279 N.W.2d 374, 377-78 (Neb. 1979) ("parental responsibilities");

---

[7] We have recognized that under Code § 63.1-248.1(A)(1) abuse or neglect may be found even where there is no actual injury to the child. *Jenkins v. Winchester Dep't of Social Servs.*, 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991) ("the statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child"). Thus, it is not necessary that a physical injury be inflicted upon the child before conduct is deemed abusive; it is sufficient if conduct "creates a substantial risk of death, disfigurement, or impairment of bodily or mental functions." Code § 63.1-248.2(A)(1).

*State ex rel. Health & Social Servs. Dep't v. Natural Father*, 598 P.2d 1182, 1185 (N.M. Ct. App. 1979) ("other care or control" and "incapacity"); *In re J.Z.*, 190 N.W.2d 27, 35-36 (N.D. 1971) (a deprived child is one "without proper parental care or control"); *In re D.T.*, 237 N.W.2d 166, 169 (S.D. 1975) ("lacks proper parental care" and "whose environment is injurious to his welfare").

Turner also contends that the guidelines are even more vague than the statute.[8] With regard to the guidelines, it is important to clarify the standard we apply for measuring any possible vagueness. As we explained in *Jackson*, the standard for measuring vagueness is not fixed and will depend in part on the nature of the enactment. 14 Va. App. at 403, 419 S.E.2d at 392 (holding that the protective services guidelines defining "mental abuse" are not unconstitutionally vague). Because the guidelines do not exact civil or criminal penalties, do not interfere with First Amendment activity, and do not have the force of law, we view any possible vagueness in the guidelines "with the greatest level of tolerance." *Id.*

In the Protective Services Manual, the Commissioner adopted the following definition and guidelines governing physical abuse:

*Physical Abuse*
Any physical injury or threat of injury which impairs or threatens to impair the child's physical functioning. Such injury or threat of injury, regardless of intent, is inflicted or allowed to be inflicted by non-accidental means.

*Guidelines*
a) Consideration must be given to the degree of harm suffered by the child as a result of the injury. As a part of that consideration the worker should include the location of the injury and the manner in which the injury was inflicted.

b) Physical injuries which could be a result of physical abuse include, but are not limited to: bone fractures, in-

---

[8] In *Jackson*, we held that the Commissioner's guidelines were administrative interpretative guidelines lacking the force and effect of law. 14 Va. App. at 399, 419 S.E.2d at 390. As in *Jackson*, we assume, without deciding, that the void-for-vagueness doctrine extends to administrative guidelines.

ternal injuries, hematomas, burns, serious bruises, dislocations, poisoning, and sprains.

Protective Services Manual, Vol. VII, Sec. III, Chap. A at 3.

Turner objects to the language, "[a]ny physical injury or threat of injury which impairs or threatens to impair the child's physical functioning." As we stated with reference to the statutory language, the term "physical injury" is not so vague, under the facts of this case, as to force Turner to guess at its meaning. This language gave Turner notice that pulling out Julene's hair would cause her "physical injury." Moreover, the guidelines provide examples of injuries that could be the result of physical abuse. This list is not intended to be exhaustive; rather, it merely provides an example of what types of physical injuries could be caused by abusive conduct. The fact that pulling out hair does not appear on this list is of no moment. Consequently, we find that this language is not so vague as to render the guidelines unconstitutional.

## V.

Finally, Turner argues that the administrative procedures violated his right to procedural due process. Turner contends that he was denied the right to confrontation and the right to an impartial decision-maker. More specifically, Turner contends that he was entitled to know the name of his accuser and to have an independent hearing officer who is not associated with the DSS.

■ The right to procedural due process is guaranteed in the Fourteenth Amendment to the United States Constitution, which provides that no person shall be deprived of life, liberty or property without due process of law. Due process claims must be addressed in a two-step inquiry. "First, there must be a deprivation of a liberty or property interest." *Jackson v. W.*, 14 Va. App. 391, 406, 419 S.E.2d 385, 393 (citing *Klimko v. Virginia Employment Comm'n*, 216 Va. 750, 754, 222 S.E.2d 559, 563 (1976)). If there is a deprivation of a liberty or property interest, due process applies and the second step of the inquiry focuses on what process or procedures are required to satisfy the Fourteenth Amendment. *Id.* at 406, 419 S.E.2d at 393-94 (citation omitted).

In order to determine whether certain procedures are constitutionally mandated, we must first decide whether Turner has suffered a "deprivation" as contemplated by the Due Process Clause.

If we find that the administrative procedures have resulted in a deprivation, then we must determine what procedural protections the Fourteenth Amendment requires. On the other hand, if Turner has not been deprived of liberty or property, then the analysis necessarily ends.

Our recent decision in *Jackson* also involved a due process challenge to the administrative appeal proceedings before the Commissioner. W., who had been accused of abusing his seven-year-old son, argued that the Due Process Clause entitled him to the right of confrontation, cross-examination, and the power to subpoena witnesses. We found that W. had failed to identify a deprivation under the Due Process Clause where he merely "speculated about possible damage to his reputation, employment," and other adverse consequences that could possibly flow from the Commissioner's finding of "founded" abuse. *Jackson*, 14 Va. App. at 411, 419 S.E.2d at 397.

Turner argues that the care, custody and companionship of one's child is a fundamental liberty interest protected by the United States Constitution through the Fourteenth Amendment, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), and that the "founded" disposition could result in the loss of custody of his children or the termination of his parental rights. While we do not dispute Turner's contention that he has a liberty interest in the continued custody of his children, we find that no interference with that liberty interest has occurred so as to constitute a deprivation under the Fourteenth Amendment. In the administrative appeal, the Commissioner is without authority to restrict Turner's rights as a parent. If custody or parental rights are to be affected, a court must intervene on appropriate process. Code § 63.1-248.6(D)(4) and (5). A "founded" disposition does not give the Commissioner the power to order a change in custody or the termination of parental rights. In fact, the only immediate consequence of the disposition is the placement of Turner's name and the names of his children in the computerized Central Registry. Code § 63.1-248.6. The placement of Turner's name in the Central Registry does not interfere with his relationship with his children.

Next, Turner contends that he has suffered a deprivation because the "founded" disposition could subject him to criminal charges. The possibility that Turner could later face criminal

charges for abusing his child is pure speculation. Furthermore, "[e]ven if [Turner] were later subject to criminal penalty, it would not be the result of the administrative appeal proceeding." *Jackson*, 14 Va. App. at 410, 419 S.E.2d at 396. As we stated in *Jackson*, the Commissioner and the department lack the authority to file criminal charges; a criminal prosecution must be initiated by the Commonwealth. *Id.* The Commissioner cannot find Turner guilty of criminal child abuse. If Turner is to be found guilty of criminal child abuse, a court must make that finding beyond a reasonable doubt.

Finally, Turner claims that the "founded" disposition may limit his future employment opportunities with the state and federal government and his ability to receive a security clearance. However, no evidence was presented that Turner's present employment or future employment opportunities are or will be impaired as a result of the Commissioner's actions. Because Turner has not identified any actual loss, and merely speculates that these adverse consequences could possibly result at some later date, he has failed to claim a deprivation under the Fourteenth Amendment. *See id.* at 411, 419 S.E.2d at 397.

We find that Turner has not alleged any deprivation of a liberty or property interest recognized under the Due Process Clause. As a result, we do not determine whether the procedures followed by the Commissioner comport with due process.[9]

For these reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

Bray, J., and Elder, J., concurred.

---

[9] In *Jackson*, we found that there was no deprivation under the Fourteenth Amendment and, therefore, we were not required to address the second issue concerning what specific procedures are demanded by the Due Process Clause. However, we addressed the second part of the due process inquiry in order to explain that even if due process were to apply, the Commissioner's procedures meet the requirements of due process. There, in balancing the public and private interests at stake and the risk of an erroneous deprivation by use of the existing procedures, we found that the challenged procedures were constitutionally adequate. *Jackson*, 14 Va. App. at 411-12, 419 S.E.2d at 397.