COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Clements and Beales
Argued at Richmond, Virginia


BENJAMIN H. RICE, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0413-06-2              JUDGE RANDOLPH A. BEALES
                                                    MARCH 27, 2007
VIRGINIA DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                             Ernest P. Gates, Judge Designate

              Gail H. Miller (Gail Harrington Miller, P.C., on briefs), for
              appellant.

              Usha Koduru, Assistant Attorney General (Robert F. McDonnell,
              Attorney General; David E. Johnson, Deputy Attorney General;
              Kim F. Piner, Senior Assistant Attorney General, on brief), for
              appellee.


        Dr. Benjamin H. Rice, Jr. (father) appeals from a child protective services founded

disposition of sexual abuse.  He contends that substantial evidence does not exist in the agency

record to sustain that finding.  Father also presents two other assignments of error:  1) whether

the preponderance of the evidence standard, as contemplated in 22 VAC 40-705-10, violates his

due process rights; and 2) whether the agency and hearing officer inappropriately held father's

decision to remain silent, which he exercised while criminal charges were being investigated,

against him during the proceedings.  For the reasons that follow, we hold substantial evidence

does not exist to sustain the agency's findings and, accordingly, reverse the judgment of the

circuit court that had affirmed the founded disposition of sexual abuse.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

STANDARD OF REVIEW

On appeal from the decision of an administrative agency, "The reviewing court will view 'the facts in the light most favorable to sustaining the [agency's] action,' and 'take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'" Jones v. West, 46 Va. App. 309, 323, 616 S.E.2d 790, 797 (2005) (quoting Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985); Code § 2.2-4027).

BACKGROUND

In late 2003, the Prince George County Department of Social Services received a complaint that alleged that the father had sexually abused his daughter (the child). The mother explained that after the child was treated for a urinary tract infection in 2001, when she was two years old, and upon mother's subsequent completion of guardian *ad litem* training, she became suspicious of sexual abuse. The matter was transferred to the Surry County Department of Social Services (Department) on December 12, 2003 because the child's mother (and father's ex-wife) had previously represented the Prince George DSS in her role as a practicing attorney. Four days later, the mother took the child to the Medical College of Virginia for a forensic examination. The examination report indicates "anogenital exam is normal."

Child protective services worker Michelle Stivers conducted the Department's investigation of the complaint. Detective Robert Castle handled a concurrent investigation on behalf of the Prince George County Sheriff's Department, though no criminal charges were ever filed. Stivers and Castle interviewed mother and the child at the home of mother's parents. A transcript of that interview was included in the agency record. During the interview, the child correctly identified different body parts and specifically referred to her private area as her

"heinie" or "fanny."[1]  She said that her father had put his finger in her heinie and that it made her heinie red and scratchy.  Stivers also spoke with mother's parents, with Wendy Hall (the child's therapist), and with Tori Templin (father's girlfriend at the time of the proceedings).  Angela Dale, a forensic investigator and case manager at the Children's Hospital of the King's Daughters Child Abuse Program, also interviewed the child.  Because criminal charges were being investigated, father refused to discuss the allegations with Stivers.

At the conclusion of the investigation, the Surry County Department of Social Services entered a disposition of "founded, level-one sexual abuse" on February 10, 2004.  That disposition was upheld after a March 30, 2004 local conference on the matter.  Father sought review by administrative hearing, which was held before a hearing officer on September 9, 2004.  The hearing was continued until and concluded on October 15, 2004.

Stivers's investigative report was introduced and made a part of the hearing record.  During the agency's presentation of testimonial evidence, the following exchange took place between appellant's counsel and Stivers:

> Q:  Okay.  What do you consider to be lascivious in this case?
> A:  As a basis for?
> Q:  As a basis for your finding?  Was there any sexual gratification noticed or anything lewd or obscene?
> A:  As I said we never talked about the alleged abuser.
> Q:  Just from what you have said though, the only thing that you have is the touching?
> A:  Yes.
> Q:  And that is just made by [the child's] disclosure?
> A:  Yes.
> Q:  In fact the physical evidence from MCV didn't show any sexual abuse?
> A:  That is correct.

The agency rested its case at the conclusion of Stivers's testimony.

---

[1] The child used those terms interchangeably and indicated a child has "Fanny in the front.  Fanny in the back."

Father testified and denied the allegations. He described several occasions where he either conducted a medical examination of the child or otherwise touched her private area. Father, a medical doctor, explained that he administered one or two suppositories to treat the child for vomiting, which was being caused by an upper intestinal illness, in the spring of 2003. Father introduced an insurance record showing that a prescription for Promethazine HCL was filled on April 23, 2003. This record listed the child as the patient but did not indicate whether or not the prescription was filled in suppository form. According to father, he also performed, in September of 2003, a physical examination of the child's private area, in the presence of his parents, because the child appeared uncomfortable and was complaining about itching "in her area."

In October 2003, the child, according to father, told him to stop sticking his finger in her heinie. When he asked the child what she was talking about, the child responded that her maternal grandmother had told her that father was sticking his finger in her heinie. Father testified that another, similar exchange occurred a couple of weeks later. Father also explained that, in December 2003, the child informed him that she had been to the doctor and that the doctor had examined her heinie and told her "everything is okay."

The child's medical records were also introduced and made part of the hearing record. As early as February 2, 2002, the records indicate "PROBLEMS: URT." The child was treated for dryness and swelling in her vaginal area on May 24, 2002, and her urinalysis indicates "Bacteria" and "UTI." The child was consistently treated over the following year for various bumps and body rashes, including treatment for scarlet fever and, on one occasion, a tick bite. Her "G/U" examinations often indicated the presence of "rash." Also, the record from an April 23, 2003 examination shows that the child presented symptoms of nausea, vomiting, and abdominal pain. Those same symptoms were documented on the child's May 5, 2003 visit, in

- 4 -

addition to a complaint that the child would not eat during the past two weeks because eating "hurts her stomach."

The administrative hearing officer issued a written opinion on January 28, 2005. The analysis section of that opinion stated the following:

> Dr. Rice did not provide his explanation of innocent medical examinations until the investigation, and particularly the questioning of [the child], had been completed. Dr. Rice testified that in *July 2003*, [the child] told him that she had been to the doctor and he had examined her heinie. Even if Dr. Rice, Sr., and his wife did testify truthfully about watching a vaginal examination of [the child] in September or October 2003, such an examination could have been staged by Dr. Rice so as to provide an alibi in the event that he was later accused of abuse. . . . The Anthem prescription printout provided by Dr. Rice does not specify that the Promethazine HCL was prescribed for [the child], nor does it indicate that it was in suppository form.

Later, in the findings of fact section, the hearing officer wrote:

> Beginning in November 2003, [the child] reported to her maternal grandmother . . . [and others] that her father had stuck his finger in her "heinie." . . . During the fall of 2003, Dr. Rice sexually abused [the child], on one or more occasions, by digitally penetrating her vagina with the intention of gaining sexual gratification.

Based on those findings, the hearing officer concluded, "The disposition of 'Founded – Sexual Abuse – Level One' of [the child] by [father] is sustained."

The circuit court reviewed the agency record and hearing officer's written opinion and determined, under the "substantial evidence standard," that "a reasonable mind would not come to a different conclusion than the hearing officer."

ANALYSIS

As this Court recently held in West, "Judicial review of a child protective services founded disposition of child abuse is governed by the Administrative Process Act (APA), codified at Code §§ 2.2-4000 to 2.2-4033. See Code § 63.2-1526(B). Accordingly, 'the burden is upon the appealing party to demonstrate error.'" 46 Va. App. at 322-23, 616 S.E.2d at 797

(quoting <u>Carter v. Gordon</u>, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998)). "'Founded' means that a review of the facts shows by a preponderance of the evidence that child abuse and/or neglect has occurred." 22 VAC 40-705-10.

"[T]he substantiality of the evidentiary support for findings of fact" is among the "error[s] of law subject to review by the court." Code § 2.2-4027. "Review of agency factual decisions is governed by the 'substantial evidence' test." <u>Turner v. Jackson</u>, 14 Va. App. 423, 429, 417 S.E.2d 881, 886 (1992) (quoting <u>Johnston-Willis, Ltd. v. Kenley</u>, 6 Va. App. 231, 242, 369 S.E.2d 1, 6 (1988)). "Under this standard, the scope of review is limited to ascertaining whether there was substantial evidence in the agency record to support the decision." <u>Id.</u> at 429-30, 417 S.E.2d at 886. "The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." <u>Johnston-Willis, Ltd.</u>, 6 Va. App. at 242, 369 S.E.2d at 7.

We hold that the evidence in the agency record, taken as a whole, was such that a reasonable mind would necessarily reach a different conclusion than that reached by the hearing officer. Notably, the medical records demonstrate that the child had been treated over the same time period that the alleged abuse occurred for both a urinary tract infection and various body rashes. The symptoms associated with those conditions – itching and redness – were the same symptoms that the child identified during her interview.

The evidence, specifically the medical records, is consistent with father's explanation and description of occasions when he examined or otherwise had contact with the child's private area. First, the record reflects that the child presented symptoms of vomiting and abdominal pain during visits with her pediatrician in April and May of 2003. Father testified that "she had a GI bug" and "was throwing up a lot" during that time. He administered a suppository in the child's rectum on one or two occasions following the child's April 23, 2003 visit with her pediatrician.

- 6 -

The insurance record provided by father, *which listed the child as the patient*, confirms that a prescription was filled on that date.[2]  In addition, the May 5, 2003 progress note reflects that the child had refused to eat during the two weeks prior to that visit due to abdominal pain. Therefore, based on the above, a reasonable mind would conclude that the most likely (and perhaps only) means to administer this type of medicine to the child during this period would have been through a suppository.

The child's medical record indicates she had a rash "all over" in August 2003.  Father explained that in September 2003 he examined the child's private area, in the presence of his parents, after the child had complained of "itching in her area."  The hearing officer concluded that "such an examination could have been staged" by the father "so as to provide an alibi in the event that he was later accused of abuse."  However, the hearing officer based this conclusion on his erroneous recollection that father testified that "in *July 2003*, [the child] told him that she had been to the doctor and [the doctor] had examined her heinie."  (Emphasis added.)  The only testimony on this point, however, was father's statement that the above conversation occurred in *December 2003*, not July 2003.  Father also testified that, in October 2003, the child told him to stop sticking his finger in her heinie.  Both of these statements by the child were, therefore, made *after* father's September 2003 medical examination of the child in response to her complaint of itching and discomfort.  Therefore, the premise upon which the hearing officer based his conclusion that father could have staged this examination of the child was unsupported by the evidence since neither of these alleged conversations between father and child had even taken place before father's examination of the child.  Accordingly, any analysis supported by this

----

[2] The hearing officer found that the "Anthem prescription printout provided by Dr. Rice does not specify that the Promethazine HCL was prescribed for [the child], nor does it indicate that it was in suppository form."  However, while it does not indicate what form in which prescriptions were filled, the insurance record dealing with the prescription, which was included in the record, clearly lists the child's name next to the heading "patient name."

erroneous finding of fact is based on a false premise and is without evidentiary support. In addition, the symptoms present at the time of the examination, itching and discomfort, were consistent with the medical evidence recorded during this same time period.

The child, in her interviews with both Stivers and Dale, talked about an occasion where her paternal grandmother (and her paternal grandfather) allegedly saw her father "touching her hiney." According to their report of the interview, the child said her paternal grandparents became very angry when her father did this. The hearing officer had noted this information in his analysis when he stated, "[The child] unequivocally stated that her father abused her at his parents' home and she identified her paternal grandmother, who she called 'grandmommy,' as catching her father when he was abusing her." Grandfather, a retired surgeon, testified he was present when father examined the child, and he saw "redness." Grandmother testified the father examined the child after she had pain when urinating. She was also present at the time and saw "redness" in the child's genital area. She denied expressing any concern about the father's conduct. Because, as we have noted above, the hearing officer applied incorrect facts to other key portions of his analysis, we hold the hearing officer, in his analysis of all of the evidence, may have improperly weighed the aspects of this particular evidence (noted in this paragraph) against the other evidence presented in the case.

The evidence also established that the child engaged in masturbation type behavior. Although the Commonwealth argues "frequent masturbation is usually associated with sexual abuse," no testimony establishes that fact or relates the onset of this activity to any source. The evidence leaves unresolved the cause, whether from sexual abuse, stress, discovery resulting from irritations or urinary tract infections, or other childhood behaviors. Indeed, the hearing officer's analysis and findings of fact make no reference to this matter as a fact supporting the

decision that he reached. Accordingly, we need not further consider it in our analysis of his decision.

Finally, the hearing officer concluded that "[father] sexually abused [the child], on one or more occasions, by digitally penetrating her vagina *with the intention of gaining sexual gratification*." (Emphasis added.) In Virginia, "Sexual abuse occurs when there is any act of sexual exploitation or any sexual act upon a child *in violation of the law . . . .*" 22 VAC 40-75-30(E) (emphasis added). The Virginia criminal code defines sexual abuse as "an act committed *with the intent to sexually molest, arouse, or gratify* any person." Code § 18.2-67.10 (emphasis added). Therefore, in order to demonstrate sexual abuse by a preponderance of the evidence, the agency must prove both an intentional touching and "the intent to sexually molest, arouse, or gratify." Id. As this Court has previously held in cases of sexual abuse, "'Intent is the purpose formed in a person's mind that may, and often must, be inferred from the facts and circumstances in a particular case.'" Blaylock v. Commonwealth, 26 Va. App. 579, 589, 496 S.E.2d 97, 104 (1998) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)).

Here, DSS Investigator Michelle Stivers, on cross-examination, admitted that the agency's evidence consisted solely of a touching, i.e., the act. The only evidence in the record describing the touching, however, indicated that father touched the child's genitalia to medically examine her. Moreover, no evidence demonstrated father possessed "the intent to sexually molest, arouse, or gratify" as required by Code § 18.2-67.10, though we recognize, as discussed above, that intent may be inferred from the facts of a certain case. However, father's testimony describing occasions where he medically examined the child or administered suppositories, which the hearing officer rejected based on incorrect factual findings, rebuts an inference that he intended to gain sexual gratification by touching the child on those occasions. Accordingly, the

- 9 -

hearing officer's finding that father intended to gain sexual gratification by touching the child is without adequate evidentiary support.

CONCLUSION

Based on the above, including clear errors of fact upon which the hearing officer based his decision, we hold, after considering the record as a whole, that a reasonable mind would indeed have to come to a different conclusion than that reached by the hearing officer and that, therefore, substantial evidence does not exist to sustain a founded disposition of level-one sexual abuse. Our holding renders appellant's other assignments of error moot.

Code § 2.2-4029 provides, in pertinent part,

> Where a regulation or case decision is found by the court not to be in accordance with law under [Code] § 2.2-4027, the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law.

The judgment of the circuit court is, therefore, reversed, and the case is remanded to the circuit court 1) to set aside the disposition of founded, level-one sexual abuse and 2) to further remand the matter to the hearing officer for any other proceedings necessary and consistent with this opinion.

Reversed and remanded.