COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


JACQUELINE REYNOLDS

MEMORANDUM OPINION*

v.       Record No. 1086-07-2                                    PER CURIAM
                                                                AUGUST 14, 2007

ANTHONY CONYERS, JR., COMMISSIONER
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF RICHMOND COUNTY
Harry T. Taliaferro, III, Judge

(Horace F. Hunter, on brief), for appellant.

(Robert F. McDonnell, Attorney General; David E. Johnson, Deputy
Attorney General; Kim F. Piner, Senior Assistant Attorney General;
Allen T. Wilson, Special Counsel, on brief), for appellee.


Jacqueline Reynolds appeals from a Child Protective Services (CPS) founded disposition

of level one physical neglect and inadequate supervision.  She contends that substantial evidence

does not exist in the agency record to sustain that finding.  Upon reviewing the record and the

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the circuit court's decision.  See Rule 5A:27.

STANDARD OF REVIEW

On appeal from the decision of an administrative agency, "[t]he reviewing court will

view 'the facts in the light most favorable to sustaining the [agency's] action,' and 'take due

account of the presumption of official regularity, the experience and specialized competence of

the agency, and the purposes of the basic law under which the agency has acted.'"  Jones v.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

West, 46 Va. App. 309, 323, 616 S.E.2d 790, 797 (2005) (quoting Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985); Code § 2.2-4027).

"Judicial review of a child protective services founded disposition of child abuse is governed by the Administrative Process Act (APA), codified at Code §§ 2.2-4000 to 2.2-4033. . . . Accordingly, 'the burden is upon the appealing party to demonstrate error.'" Id. at 322-23, 616 S.E.2d at 797 (quoting Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998)).

"[T]he substantiality of the evidentiary support for findings of fact" is among the "error[s] of law subject to review by the court." Code § 2.2-4027. "Review of agency factual decisions is governed by the 'substantial evidence' test." Turner v. Jackson, 14 Va. App. 423, 429, 417 S.E.2d 881, 886 (1992) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 6 (1988)). "Under this standard, the scope of review is limited to ascertaining whether there was substantial evidence in the agency record to support the decision." Id. at 429-30, 417 S.E.2d at 886. "The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Johnston-Willis, Ltd., 6 Va. App. at 242, 369 S.E.2d at 7.

BACKGROUND

On July 27, 2004, the Richmond County Department of Social Services received a CPS complaint alleging that four-year-old M.K., born March 23, 2000, was left unattended in a van for a period of time by appellant, his daycare teacher, while under her care as an employee of Segar's Tender Loving Care Center ("the Center"). In response to the complaint, a CPS worker conducted an investigation and determined Founded Physical Neglect; Inadequate Supervision - Level I, a disposition subsequently affirmed in successive appeals, - - by the local conference, a

review panel within the local department, the Commissioner of the Virginia Department of Social Services (DSS) and, finally, by the circuit court.

The record of the administrative and related proceedings below includes an investigative narrative report prepared by Liz Smith, the CPS social worker, together with the hearing testimony of Debbie Beirne, DSS Licensing Inspector; Nolan Lloyd, an eyewitness; Paulina Thompson, an employee of the Rappahannock Community College (RCC) library; appellant; her sister, Jaynell Segar Brooks; Raymond Whitaker; and Reverend Russell B. Smith, along with certain documentary proofs.

Such evidence disclosed that on July 27, 2004, appellant, a daycare teacher employed by the Center, took a group of children on a field trip to the RCC library for storytime. During the CPS investigation, appellant told Smith and Beirne that she loaded the children into the Center's van and left from the Center at approximately 9:55 a.m. Appellant told Smith and Beirne that she arrived at RCC at approximately 10:10 a.m., and entered the library at approximately 10:15 a.m. Appellant stated that at approximately 10:40 a.m., she lined the children up to leave the library and head to the van.

Lloyd, a student and part-time employee of RCC, arrived there on July 27, 2004, at approximately 10:50 a.m., to take a test. Upon exiting his vehicle and while in the parking lot, Lloyd heard a child calling for his mother. When the child continued calling, Lloyd looked around the parking lot and found the Center's van with M.K. inside it, in the back. The van's windows and doors were closed. The front two doors were locked, but the side door was unlocked. Two to three minutes from the time he entered the parking lot, Lloyd opened that side door, and M.K. exited the van upon Lloyd motioning for him to do so. When Lloyd opened the van's side door, he had to step back due to the amount of heat escaping from the van. M.K. had tears running down his face, mucus coming from his nose, and Lloyd could tell he had been

sweating. Lloyd described M.K. as "definitely hot and uncomfortable." Lloyd wrote down the Center's information from the side of the van, and then walked toward RCC with M.K.

As Lloyd and M.K. approached the library building, they encountered appellant, who had a group of children with her. Lloyd asked appellant how many children she had, and she told him eleven. Counting M.K., appellant had twelve children. Appellant, who appeared upset and "obviously remorseful" that she had forgotten M.K., picked him up and hugged him, took him into her custody, and returned to the Center, where she reported the incident to her employer. During the CPS investigation, appellant stated that M.K. was warm and had sweat on his shirt.

During that investigation, appellant also indicated to Beirne that she normally made a list of children going on a field trip. She would then check the list when the children exited the van at their destination to ensure that all of them were present. Appellant claimed she had the list on July 27, 2004, but M.K.'s name was not on it. Appellant admitted to Smith that on July 27, 2004, she did not check the children against the names on her list nor did she do a head count, because she was running late for the storytime. She stated she did a "quick look" inside the van, but denied seeing M.K.

Lloyd estimated that the temperature that day was approximately eighty-five degrees. While Smith was not able to obtain the exact temperature for Warsaw, Virginia for that day from the National Oceanic and Atmospheric Administration, William Brown, a meteorologist, provided her with information concerning temperatures for Richmond, Virginia, Washington D.C., and Salisbury, Maryland. That information indicated that for those areas the lowest temperature on July 27, 2004, between 10:00 a.m. and 11:00 a.m., was seventy-nine degrees Fahrenheit, and the highest temperature was eighty-six degrees Fahrenheit. Lloyd confirmed that when the child exited the Center's van, he was "definitely hot and uncomfortable."

ANALYSIS

"Physical Neglect" is defined under the Virginia Administrative Code as:

> [W]hen there is the failure to provide food, clothing, shelter, or supervision for a child to the extent that the child's health or safety is endangered. This also includes abandonment and situations where the parent's or caregiver's own incapacitating behavior or absence prevents or severely limits the performing of child caring tasks pursuant to Code § 63.2-100 of the Code of Virginia.[1]

22 VAC 40-705-30(B). Physical neglect can be "multiple occurrences or a one-time critical or severe event that results in a threat to health or safety." 22 VAC 40-705-30(B)(1). "Level 1" "includes those injuries/conditions, real or threatened, that result in or were likely to have resulted in serious harm to a child." 22 VAC 40-700-20(1). "'Founded' means that a review of the facts shows by a preponderance of the evidence that child abuse and/or neglect has occurred." 22 VAC 40-705-10.

Here, evidence proved that appellant left four-year-old M.K. in the Center's van without taking adequate measures to ensure that all children had exited the van and that they were present and accounted for before she left the van and entered the RCC library. Substantial evidence exists in the record from which the fact finder could reasonably infer that it was between seventy-nine and eighty-six degrees Fahrenheit between 10:00 a.m. and 11:00 a.m. on July 27, 2004, at the location where appellant left M.K. in the Center's van. When Lloyd found M.K. approximately thirty-five minutes after the time appellant stated that she entered the library with

---

[1] Code § 63.2-100 provides in its pertinent part as follows:

> "Abused or neglected child" means any child less than 18 years of age:

> 1. Whose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement, or impairment of bodily or mental functions . . . .

- 5 -

the other children, the van's windows were closed and one door was unlocked. When Lloyd opened the van door, the heat escaping from the van caused him to step back. He found M.K. in a car seat, crying, sweaty, and obviously hot and uncomfortable. Appellant's conduct, which constituted a failure to provide supervision for M.K., endangered and threatened M.K.'s health and safety. Moreover, the conditions under which appellant left the child, did not, but were likely to have resulted in serious harm to the child.

Thus, we find that substantial evidence in the record supports the administrative disposition, and a reasonable mind would not necessarily come to a different conclusion.

We find no merit in appellant's argument that the record's lack of medical or scientific evidence to prove that the child was likely to suffer serious harm as a result of appellant's actions necessitates a reversal of the circuit court's decision. First, contrary to appellant's assertions, the record does contain evidence regarding the weather on July 27, 2004 through the testimony of Lloyd and Smith. It is well established that hearsay evidence is admissible at an administrative hearing conducted in accordance with the Administrative Process Act. See Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 701 (1998). "If the agency relies on hearsay evidence, the court reviewing the sufficiency of that evidence on appeal may give it the same weight as any other record evidence." Id. Moreover, it is certainly within the realm of common knowledge that leaving a four-year-old child for at least thirty-five minutes, in a closed vehicle, at the end of July, in Virginia, on a day when temperatures were in the low to mid-eighties, was likely to result in serious harm to that child.

Accordingly, we summarily affirm the decision of the circuit court.

Affirmed.