COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Powell and Senior Judge Clements


M. H.

v.     Record No. 0116-10-4

VIRGINIA DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 3, 2010


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James H. Chamblin, Judge

(William B. Reichhardt; Amanda DeFede; William B. Reichhardt &
Associates, on briefs), for appellant.

(Kenneth T. Cuccinelli, II, Attorney General; David E. Johnson,
Deputy Attorney General; Kim F. Piner, Senior Assistant Attorney
General; Noelle L. Shaw-Bell, Assistant Attorney General III, on
brief), for appellee.


M.H. appeals the trial court's ruling affirming the administrative hearing officer's founded

disposition of Physical Neglect – Inadequate Supervision – Level Three. M.H. argues that the trial

court erred by (1) finding that the scope of a caretaker's responsibility to a child does not permit the

caretaker to make reasonable assumptions regarding the care of a child in their absence;

(2) determining that a caretaker physically neglected a child, pursuant to 22 VAC 40-705-30(B),

when the threat of injury was not directly caused by the action or inaction of that caretaker; and

(3) holding the disposition finding against M.H. was supported by the substantiality of the evidence.

Upon reviewing the record and briefs of the parties, we summarily affirm the decision of the trial

court. Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In June 2008, M.H. was an assistant director for a children's summer program at King Solomon's Christian Academy. On June 26, 2008, a four-year-old boy, K.S., attended the program, and M.H. and Austin Monroe were his teachers that day. At approximately 12:30 p.m., K.S. was in the gymnasium with other children, while an independent contractor from Fit Kids, Jared Boehner, led the children in a physical fitness activity. M.H. and Monroe were supervising the children during the activity. K.S. did not want to participate in the activity. Another child, A., hurt his finger, and M.H. took A. to the office for first aid. While M.H. was with A., Monroe asked M.H. if he could take his lunch break. M.H. allowed Monroe to do so. She assumed that Monroe arranged for another teacher to be present in the gymnasium with Boehner and the children. M.H. returned to the gymnasium with A. approximately fifteen minutes after she left, and found that Boehner was alone with the children.

At some point between the time when K.S. stopped participating in the Fit Kids activity and when M.H. returned to the gymnasium, K.S. left the gym via a door which did not have an alarm on it. K.S. could not re-enter the gymnasium because the door locked behind him. K.S. walked to a nearby highway, and a well-intentioned stranger found him and took K.S. home. K.S.'s mother waited for the center to call her to tell her that K.S. was missing, but the center did not call her.

M.H. did not notice that K.S. was gone, even though he had a distinctive appearance, he wore a turban, and there were only eight children in the gymnasium when she returned from the office. M.H. did not perform a head count of the children in the gymnasium. When M.H. noticed that K.S. was missing, she assumed that he was in another class at the center, but she did not check to see where he was.

At approximately 2:00 p.m., K.S.'s parents went to the center to ask where their son was. No one in the center knew where he was. K.S.'s parents then told the center employees that he left the building and was brought home.

On September 15, 2008, the Loudoun County Department of Social Services made a finding against M.H. of Physical Neglect – Inadequate Supervision – Level Two. On November 6, 2008, the local conference appeal hearing officer sustained the disposition. M.H. appealed this finding, leading to an administrative appeal hearing. On February 26, 2009, the administrative hearing officer upheld the finding, but amended it to Physical Neglect – Inadequate Supervision – Level Three. M.H. appealed to the trial court. The Department filed a motion to dismiss, and the trial court held a hearing on October 1, 2009. On November 5, 2009, the trial court issued a letter opinion granting the motion to dismiss and affirming the administrative finding. The trial court entered an order incorporating its letter opinion on December 31, 2009. M.H. timely noted her appeal.

ANALYSIS

The Administrative Process Act (APA), codified at Code §§ 2.2-4000 to 2.2-4033, governs the judicial review of a founded disposition of child abuse or neglect. "In an appeal to the circuit court from a decision by an agency, the burden is upon the appealing party to demonstrate error." Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). "'The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" Id. at 141, 502 S.E.2d at 701 (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)); see also Turner v. Jackson, 14 Va. App. 423, 429-30, 417 S.E.2d 881, 887 (1992).

> However, where the question involves an interpretation which is
> within the specialized competence of the agency and the agency
> has been entrusted with wide discretion by the General Assembly,
> the agency's decision is entitled to special weight in the courts. . . .

> "The reviewing judicial authority may not exercise anew the
> jurisdiction of the administrative agency and merely substitute its
> own independent judgment for that of the body entrusted by the
> Legislature with the administrative function." Virginia Alcoholic
> Beverage Control Commission v. York Street Inn, Inc., 220 Va.
> 310, 315, 257 S.E.2d 851, 855 (1979) (quoting Schmidt v. Board
> of Adjustment of the City of Newark, 9 N.J. 405, 423, 88 A.2d
> 607, 615-16 (1952)).

Johnston-Willis, Ltd., 6 Va. App. at 244, 369 S.E.2d at 8.

Issue 1 – The caretaker's responsibility

M.H. argues that the trial court erred by finding that the scope of a caretaker's responsibility to a child does not permit the caretaker to make reasonable assumptions regarding the care of a child in their absence. M.H. contends the trial court's determination created a heightened level of responsibility for a caretaker.[1]

> Physical neglect occurs when there is the failure to provide food,
> clothing, shelter, or supervision for a child to the extent that the
> child's health or safety is endangered. This also includes
> abandonment and situations where the parent or caretaker's own
> incapacitating behavior or absence prevents or severely limits the
> performing of child caring tasks pursuant to Code § 63.2-100 of
> the Code of Virginia. . . .

22 VAC 40-705-30(B).

Inadequate supervision is a category of physical neglect, and it is defined as follows:

> The child has been left in the care of an inadequate caretaker or in
> a situation requiring judgment or actions greater than the child's
> level of maturity, physical condition, and/or mental abilities would
> reasonably dictate. Inadequate supervision includes minimal care
> or supervision by the caretaker resulting in placing the child in
> jeopardy of sexual or other exploitation, physical injury, or results

---

[1] At the trial court level, M.H. conceded that she was a "caretaker" as defined by the Virginia Administrative Code and the Child Protective Services manual. In her reply brief on appeal, M.H. states, "at the time of the 'threatened injury,' which arose at the time of elopement, M.H. was not K.S.'s caretaker." Since she already conceded at the trial court level that she was a "caretaker," we will not consider M.H.'s argument in her reply brief on appeal that she was not the caretaker for K.S. when he left the building.

in status offenses, criminal acts by the child, or alcohol or drug
abuse.

Virginia Department of Social Services, Child Protective Services, Volume VII, Section III,
Chapter A, Part II(C)(2.2), March 2009.

The administrative hearing officer found that M.H. made several assumptions, which
constituted "minimal care or supervision" and placed the child in jeopardy of injury. For
example, when Monroe asked to leave to go on break, M.H. assumed that there was a teacher
with the children in the gymnasium, but there was not. When M.H. returned to the gymnasium,
she assumed that all of the children were in the gymnasium, but K.S. was not. When M.H.
noticed that K.S. was not with the other children in her class, M.H. assumed that he was in
another class in the center, but he was not.

M.H. argues that her assumptions were reasonable and did not qualify as "minimal care
or supervision." She contends she had no reason to believe that K.S. left the building. However,
there was evidence that K.S. was having a hard time adjusting to the program and did not want to
participate in the group's activities.[2]

M.H. did not take the necessary steps to ensure that all of the children were accounted for
and supervised. The trial court held,

> The neglect occurred by her acts and omissions after she returned
> to the gym and failed to either recognize that the child was not
> there, or if she did, failed to do anything about it except assume
> that some other person at the day care center was taking care of the
> child.

The trial court concluded that the hearing officer did not "impermissively" expand the definition
of "inadequate supervision" and properly interpreted Physical Neglect – Inadequate Supervision.

---

[2] There was conflicting evidence as to whether M.H. was ever told that K.S. had a
tendency to "dart and run," meaning that he would not sit in his assigned place and try to leave
his group.

We agree. M.H. did not provide the "minimal care or supervision" necessary to ensure that all of the children for which she was responsible were present and safe.

Issue 2 – Causal connection

M.H. argues that the trial court erred in determining that a caretaker physically neglected a child, pursuant to 22 VAC 40-705-30(B), when the threat of injury was not directly caused by the action or inaction of that caretaker.

"The complaint or report must allege a link between the actions or inaction of the caretaker, regardless of the caretaker's intent, and the injury to the child or the threat of injury to the child." Virginia Department of Social Services, Child Protective Services, Volume VII, Section III, Chapter A, Part III(D)(2.3.3), July 2010.

M.H. asserts that she was not in the gymnasium when K.S. left. Since K.S. was safely with his mother when M.H. returned to the gymnasium, M.H. contends she could not have neglected the child because there was no threat of injury when she could have, or should have, discovered K.S.'s disappearance.

The trial court stated, "I do not accept [M.H.'s] argument that she cannot have neglected the child because, by the time she realized the child had left the gym, the child was safely home (by the good fortune of a very caring stranger)."

The trial court further explained:

> The causation factor in child neglect or physical neglect is that the neglect must cause actual physical harm or the threat of physical harm. If a person responsible for a child – the caretaker, as [M.H.] admits she was to the child – through his or her actions or inactions causes a threat to a child, then physical neglect has occurred.

Lastly, the trial court stated, "The Hearing Officer's determination was based upon what [M.H.] did and did not do after she returned to the gym after the child had left unnoticed."

M.H. contends she was not the direct supervisor of K.S. because she was in the office with another child when K.S. left. However, as the hearing officer pointed out:

> No one could fault the Appellant for leaving the gym with an injured child; it was clearly part of her responsibility. Yet, as director of the day camp program, she also knew that her aide, Mr. Monroe, was leaving the premises and was aware, too, that she was then the sole adult responsible for providing supervision to the children in her care.

M.H. was responsible for K.S., and when she returned to the gymnasium, she failed to notice that he was missing. When she finally noticed that K.S. was not in the gym, she incorrectly assumed that he was in another class. The fact that he was safely at home with his mother did not change M.H.'s responsibilities to find the boy and ensure that he was safe.

The trial court did not err in finding that she physically neglected the child even if she was not in the gymnasium when he left.

### Issue 3 – Substantiality of the evidence

M.H. argues that the trial court erred in holding that the disposition finding against her was supported by the substantiality of the evidence.

> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

Code § 2.2-4027.

Substantial evidence in the agency record supports the finding. M.H. did not ensure that a teacher was watching the children when Monroe left. When M.H. returned to the gymnasium, she did not notice that K.S., who had a distinct appearance and was having trouble adjusting to the program, was not present. M.H. later assumed that K.S. was in another class, but she did not verify that assumption. M.H.'s assumptions led to the finding of her providing inadequate

supervision. M.H. had a responsibility as K.S.'s caretaker to ensure his safety. However, she did not know where he was, much less whether he was safe.

M.H. contends she was not present when K.S. left the gym, and even if she had looked for him immediately upon her return to the gymnasium, K.S. would not have been exposed to a threat of physical injury. However, this contention constitutes speculation. The fact remained that M.H. was supposed to be supervising K.S., and he left the building without her noticing that he was gone until approximately one hour later. While K.S. was in M.H.'s class, he escaped the gymnasium, walked to a busy highway, and was picked up by a stranger. His safety was endangered.

The trial court found that M.H.'s "failure to provide adequate supervision as supported by the evidence is fully explained in" the administrative hearing officer's findings of facts. We agree. The trial court did not err in affirming the disposition.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.