COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia

UNPUBLISHED

FLETCHER THORNWELL

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0399-22-1                       JUDGE RANDOLPH A. BEALES
                                                    SEPTEMBER 12, 2023

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

(Cheran Cordell Ivery, City Attorney; L. Olivia Alexander, Assistant
City Attorney II; Christopher Young, Guardian ad litem for the
minor child, on brief), for appellee.  Appellee and Guardian ad litem
submitting on brief.


Fletcher Thornwell ("father") appeals the circuit court's dispositional orders which found

that father's child was abused or neglected and which transferred custody of the child to the

maternal grandmother.  On appeal, father challenges the circuit court's denial of his motion to strike

and contends that the City of Hampton Department of Social Services (the "Department") failed to

show that the child was abused or neglected.  Father also challenges the transfer of custody of the

child to the maternal grandmother.

I.  BACKGROUND

Father and Amber Sparagan ("mother") are the biological parents to the minor child, who

was ten months old at the time of the child's removal from the home.[1]  Father and mother told the

---

[*] This opinion is not designated for publication.  See Code § 17.1-413(A).

[1] Father is also the biological father to four other children, who are all now adults.

Department that they were the primary caretakers of the minor child. On July 27, 2020, the Department received a report after Emergency Medical Services took the child by ambulance to Children's Hospital of the King's Daughters ("CHKD") in Norfolk as a result of seizure-like activity. The child's medical report indicated that he had no history of seizures prior to this incident. The parents told the Department that, before the seizures began, the child "was screaming and crying and being passed back and forth between" the parents. They reported that the child's eyes then "began to roll back in his head." Upon admission to CHKD, the child had no visible marks or bruises. The child underwent a CT scan that "revealed small bilateral chronic subdural hemorrhages along the bilateral frontal convexities, with a tiny amount of acute subdural blood on the right." A few days later, the child had an MRI scan taken that "again revealed small bilateral subdural hematomas."

The child's doctor (who works in CHKD's Child Abuse Program) informed the Department that "it is possible [the child] might have been shaken due to the collection of blood on the front and around the sides of his brain." The doctor explained that "[t]he blood appeared to have been present for awhile, indicating prior trauma, and there were also areas of new blood." The doctor "opined it is possible that multiple nonaccidental traumatic incidents occurred" and explained that "one side of the brain had more significant bleeding." During a later consultation with the Department, the child's doctor stated that "the injuries [the child] sustained were most likely caused by blunt force trauma such as being shaken, being hit repeatedly, or having his head hit against the wall." Following the consultation with the child's doctor, the Department implemented a safety plan preventing mother and father from having contact with the child.

Mother reported to the police and the Department that the child had been "fussy" and did not want to be touched in the time period before the seizure. Mother contacted a nurse to inquire about the child's symptoms, who indicated that he could have been teething. Mother denied that the

child was "being shaken, dropped, or rolling off the bed." Father informed the police and the Department that on July 26, 2020, mother and the child were together in the bedroom when the child "fell out." Mother "came out of the bedroom and into the living room and [father] observed [the child] was laid out in [mother]'s arms." Father also denied physically harming the child or having knowledge of someone else harming the child—either accidentally or non-accidentally.

The Department then contacted the child's maternal grandmother, who agreed to assume the care of the child to prevent him from having to enter foster care. The Department conducted a home visit with the maternal grandmother and found her home to be suitable for the child. The maternal grandmother also indicated that she wished to obtain custody and agreed to follow the safety plan that the Department had put in place. The child was placed in the maternal grandmother's care upon his discharge from CHKD.

The Department conducted a family engagement meeting where the parents learned that the Department would not recommend that the child be returned to their care. Instead, the parents learned that the child would remain in the maternal grandmother's care. The Department also informed mother and father that they would need to complete a parental capacity evaluation and substance abuse assessment.[2] The child participated in physical therapy while in the maternal grandmother's care.

On October 20, 2020, after receiving the doctor's reports and questioning the parents, the Department petitioned for emergency removal of the child. The Department stated that "[a]n emergency removal is necessary based on [the child]'s age, injuries, and due to the fact that it is unclear which of his parents is the likely abuser." The Department stated that "[b]oth parents reported they are the only people who care for [the child], and therefore are the only two possible

---

[2] The record does not indicate whether father completed the parental capacity evaluation and substance abuse assessment.

abusers." The Department concluded that "[d]ue to the injuries [the child] sustained and the lack of any plausible explanation to account for [the child]'s injuries, [the child] would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would likely result if he were left in the care of" mother and father.

The Hampton Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order on October 20, 2020, and then entered an adjudicatory order for abuse or neglect. The JDR court then entered a dispositional order that transferred custody of the child to the maternal grandmother. Both parents appealed the JDR court's ruling to the circuit court.

At the hearing in the circuit court, the Department offered into evidence CHKD's report following the "Child Abuse Program" consultation. The report concluded that the child's "subdural hemorrhages and retinal hemorrhages are diagnostic of abusive head trauma, in the absence of any plausible history of accidental trauma."

At the close of the Department's evidence, father joined mother's motion to strike. The parents acknowledged "concern for the nonaccidental trauma," but contended there is no admission "of any action or inaction on behalf of the parents, purposeful or otherwise." The parents argued that the Department failed to establish abuse or neglect by a preponderance of the evidence. The Department responded that "the medical report is very clear that there is no viable explanation for [the child]'s injuries except for nonaccidental head trauma." The Department also argued that the parents were the child's sole caregivers and that it, therefore, followed that they could be the only ones to cause the child's injuries. The circuit court denied the parents' motion to strike.

Mother testified that she and father were the primary caretakers of the child and that they had been caring for him on the day of the seizure. Both mother and father testified that neither parent intentionally harmed the child. Father testified that the child had a difficult birth that required the application of a vacuum to the child's head during delivery and that the child's head

appeared deformed or cone-shaped at birth. However, the trial judge was not persuaded that this explained the extent of injuries present when the child was hospitalized in July 2020. At the close of the evidence, father renewed the motion to strike. The circuit court then denied the renewed motion.

At the close of argument and evidence, the circuit court held that the Department established by "clear and convincing evidence" that mother and father abused or neglected the child.[3] The circuit court cited the "ultimate diagnosis" that the child suffered "subdural hemorrhages and retinal hemorrhages" and that the parents "were the parties responsible for the wellbeing of the child," and thus concluded that the Department had met its burden. The circuit court granted the Department's request to transfer custody of the child to the maternal grandmother, with supervised visitation to the parents at the maternal grandmother's discretion. Father now appeals to this Court.

## II. ANALYSIS

On appeal, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991) (alteration in original) (quoting *Farley v. Farley,* 9 Va. App. 326, 329 (1990)). "We review the trial court's decisions on custody and visitation for an abuse of discretion." *Rainey v. Rainey*, 74 Va. App. 359, 376 (2022). In addition, when "the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court.'" *Bedell v. Price*, 70 Va. App. 497, 504 (2019) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 336 (1992)). "Where, as here, the court hears the evidence *ore tenus*,

---

[3] The circuit court applied the incorrect burden of proof, as preponderance of the evidence is the appropriate standard for abuse or neglect cases. *See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013). This error is clearly harmless as "[c]lear and convincing proof is a higher standard of proof than that required under a preponderance standard." *Turner v. Jackson*, 14 Va. App. 423, 428 (1992).

its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

### A. Abuse or Neglect

On appeal, father challenges the circuit court's denial of the motion to strike, contending that the Department failed to show that the child was abused or neglected. "A denial of a motion to strike is error only if it 'is conclusively apparent that [the non-moving party] has proven no cause of action' or the non-moving party's position is plainly without evidence to support it." *Dixon v. Dixon*, 71 Va. App. 709, 714 (2020) (alteration in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)).

Code § 16.1-228(1) defines an abused or neglected child as any child

> [w]hose parents or other person responsible for his care creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991). Rather, "the Code contemplates intervention in such circumstances . . . where '[t]he child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent[s].'" *Id.* (second alteration in original) (quoting Code § 16.1-251(A)(1). Proof by a preponderance of the evidence is the appropriate standard for abuse or neglect cases. *See Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).

Father contends that the Department failed to show that the child was abused or neglected, given that the parents did not confess to abusing the child and given that no

eyewitness viewed the parents abusing the child. However, the Department presented credible medical evidence that showed that the minor child's "subdural hemorrhages and retinal hemorrhages are diagnostic of abusive head trauma, in the absence of any plausible history of accidental trauma." There is credible medical evidence in the record to support the circuit court's finding, and the circuit court was not plainly wrong to give this evidence its due weight. *See Collado v. Commonwealth*, 33 Va. App. 356, 365 (2000) (trial court relied on medical evidence to establish that the child was "criminally assaulted during the period appellant had sole custody and control of the child"). In addition, the record now before us on appeal does not show that the child was injured by an accident. Consequently, we cannot say that the circuit court was plainly wrong in finding that mother and father "were the parties responsible for the wellbeing of the child," that mother and father reported that they were the child's only caretakers, and that the child suffered non-accidental head trauma. Thus, given the record now before this Court on appeal, we certainly cannot say that the circuit court erred by denying father's motion to strike and by finding that the child was abused or neglected.

## B. Transfer of Custody

Father also challenges the circuit court's decision to transfer custody of the child to the maternal grandmother. Father contends that the Department "simply took the child from the parents and handed the child over to the maternal grandmother"—and that the Department "made no effort whatsoever during the following year and a half to contact [the] parents or offer any sort of services" to them.[4]

As discussed *supra*, the circuit court found that the child was abused or neglected by mother and father. The circuit court also determined that there was no less drastic alternative

---

[4] To the extent that father argues that the Department was required to offer him services, he raises this argument for the first time on appeal and, therefore, he failed to preserve this argument for appeal under Rule 5A:18.

than to transfer legal and physical custody of the child. After finding that a child is abused or neglected and after finding that there is no less drastic alternative to transferring custody of the child, the trial court may transfer custody of the abused child to a "person with a legitimate interest subject to the provisions of subsection A1." Code § 16.1-278.2(A)(5)(a). Following the provisions of Code § 16.1-278.2(A1), the circuit court found that the maternal grandmother was willing and qualified to receive and care for the child, that she was willing to have a positive and continuous relationship with him, that she was committed to providing a permanent and suitable home for him, and that she was willing and had the ability to protect him from abuse and neglect.

The Department conducted a home visit of the maternal grandmother's residence and found it to be "well[-]kept with no safety hazards." The maternal grandmother also had an appropriate sleeping area for the child. In addition, she was willing to care for him and understood the conditions of the safety plan implemented for the child's safety. Consequently, we cannot say that the circuit court erred in finding that the maternal grandmother was a person with a legitimate interest who satisfied all of the requirements of Code § 16.1-278.2(A1). Therefore, the circuit court did not err in transferring custody of the child to the maternal grandmother after finding the child to be abused or neglected.

### III. CONCLUSION

In short, the circuit court did not abuse its discretion in removing the child from the home and giving legal and physical custody of the child to the maternal grandmother, a person with a legitimate interest under the statute. Both father and mother acknowledged that they were the child's only caregivers when he suffered serious head trauma, which was diagnosed at Children's Hospital of the King's Daughters as a non-accidental injury (in the absence of evidence of an accident) that had also likely occurred on more than one occasion. Therefore, at least one of the parents, at minimum, permitted the harm to occur so that the child's life was in danger if he was

not removed from the home and allowed to live with his grandmother. The Department made findings of fact that the maternal grandmother would care for the child well—and would not allow him to be abused or neglected. Therefore, the circuit court did not err in transferring legal and physical custody of the child to the maternal grandmother.

For all of these reasons, we do not disturb the judgment of the Circuit Court of the City of Hampton.

*Affirmed.*